**No. 23-11237**
**Consolidated with**
**No. 24-10004**

---

# In the United States Court of Appeals

# for the Fifth Circuit

---

SECURITIES AND EXCHANGE COMMISSION,

*Plaintiff – Appellee,*

v.

TIMOTHY BARTON,

*Defendant – Appellant.*

---

From the United States District Court
for the Northern District of Texas
Honorable Brantley Starr, U.S. District Judge
Cause No. 3:22-CV-2118-X

---

**RECEIVER'S AMICUS BRIEF**

---

BROWN FOX PLLC
Charlene C. Koonce
State Bar No. 11672850
Timothy B. Wells
State Bar No. 24131941
8111 Preston Road, Suite 300
Dallas, TX 75225
T: (214) 327-5000
F: (214) 327-5001
charlene@brownfoxlaw.com
tim@brownfoxlaw.com

*Counsel for Receiver Cortney C. Thomas*

## CERTIFICATE OF INTERESTED PERSONS

Pursuant to 5TH CIR. R. 28.2.1, the undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of Rule 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges of this Court may evaluate possible disqualification or recusal.

1.    126 Villita LLC, receivership entity

2.    2999TC Acquisitions, LLC, receivership entity

3.    2999TC JMJ CMGR, LLC (Delaware), receivership entity

4.    3820 Illinois, LLC, interested party

5.    Adam and Reese LLP, counsel for interested party Bank of America, N.A.

6.    Alexander, Daniel Rasoul, counsel for interested party Dhiraj Ramolia

7.    AVG West, LLC, receivership entity

8.    Badgley, Serena, interested party

9.    Bank of America, N.A., interested party

10.   Barbero, Megan, counsel for plaintiff-appellee Securities and Exchange Commission

11.   Barton, Maximilien, interested party

12.   Barton, Timothy, defendant-appellant

13.   Baum, Nathan B., counsel for interested parties Maximilien Barton, MXBA LLC, and TRTX Properties LLC, and receivership entities Gillespie Villas LLC, TC Hall, LLC, Titan Investments LLC, a/k/a Titan 2022 Investments, LLC, and Venus59 LLC

14.  BEE2019, LLC, receivership entity

15.  Bernstein, Keefe M., counsel for plaintiff-appellee Securities and Exchange Commission

16.  BM318 LLC, receivership entity

17.  Broadview Holdings Trust, receivership entity

18.  Brown Fox PLLC, counsel for receiver Cortney C. Thomas

19.  Buchholz, Robert W., counsel for interested party Southern Star Capital LLC

20.  Cain & Skarnulis PLLC, counsel for interested party Serena Badgley

21.  Capps, Aaron T., counsel for interested party Circle H Contractors LP

22.  Capps and Associates PLLC, counsel for interested party Circle H Contractors LP

23.  Carnegie Development, LLC, defendant and receivership entity

24.  Carrillo, C. Alan, counsel for receiver Cortney C. Thomas

25.  Chandler & Shavin PLLC, counsel for interested party Dhiraj Ramolia

26.  Chandler Law PC, counsel for interested party Dhiraj Ramolia

27.  Chandler, Corinna P., counsel for interested party Dhiraj Ramolia

28.  Chapple, Ryan E., counsel for interested party Serena Badgley

29.  Cheves, P. Kyle, counsel for interested party McCormick 101, LLC

30.  Circle H Contractors LP, interested party

31.  Conley, Michael A., counsel for plaintiff-appellee Securities and Exchange Commission

32. Cooke, Chris, counsel for interested parties Maximilien Barton, MXBA LLC, and TRTX Properties LLC, and receivership entities Gillespie Villas LLC, TC Hall, L.L.C., Titan Investments LLC, a/k/a Titan 2022 Investments, LLC, and Venus59 LLC

33. Cox, Eric Angela Nealy, counsel for interested party HNGH Turtle Creek

34. Curran, Thomas J., counsel for interested parties Moss & Associates, LLC and MFO Venus Development, LLC

35. D4DS LLC, receivership entity

36. D4FR LLC, receivership entity

37. D4IN, LLC (Texas), receivership entity

38. D4KL LLC, receivership entity

39. D4MC, LLC (Texas), receivership entity

40. D4OP, LLC, receivership entity

41. DeYoung, Kyle M., counsel for interested party HNGH Turtle Creek, LLC

42. DJD Land Partners, LLC, relief defendant and receivership entity

43. Edney, Michael J., counsel for defendant-appellant Timothy Barton

44. Enoch Investments LLC, receivership entity

45. Etri, James E., counsel for plaintiff-appellee Securities and Exchange Commission

46. FHC Acquisition LLC, receivership entity

47. Freda, Dominick V., counsel for plaintiff-appellee Securities and Exchange Commission

48. First Development Company of Ohio LLC, interested party

49.  Fu, Haoqiang, defendant

50.  Fullington, Ian E., counsel for interested parties Moss & Associates, LLC and MFO Venus Development, LLC

51.  Gillespie Villas LLC, receivership entity

52.  Gitlin, Jonathan Alexander, counsel for interested party First Development Company of Ohio LLC

53.  Goldmark Hospitality LLC, receivership entity

54.  Green, Gordon Welborne, counsel for interested party Truist Bank

55.  Hale, Harlin D., counsel for ADR Provider

56.  Heiskell, Michael P., counsel for defendant Stephen T. Wall

57.  Hicks, Jr., George W., counsel for counsel for interested party HNGH Turtle Creek, LLC

58.  Hill, Ezekiel L., counsel for plaintiff-appellee Securities and Exchange Commission

59.  HNGH Turtle Creek, LLC, interested party

60.  Holland & Knight LLP, counsel for defendant-appellant Timothy Barton

61.  HR Sterling, LLC, receivership entity

62.  Hunter, Renee M., counsel for intervenor United States of America.

63.  Hunton Andrews Kurth LLP, counsel for defendant-appellant Timothy Barton

64.  Investors:

      1.  Hong Guo
      2.  Yijing Wu

3.    Nanjing Sun
4.    Kangying Mao
5.    Huaizhen Gao
6.    Wanwan Li
7.    Yue Xu
8.    Lan Ji
9.    Wei Xing
10.   Wenjun Wang
11.   Jie Zou
12.   Jun Wang
13.   Lin Li
14.   Yunding Kang
15.   Shuping Yang
16.   ChangHua Lin
17.   Pei Guan
18.   Yulan Chen
19.   Hairuo Yang
20.   Xuegeng Gong
21.   Haiming Xu
22.   Aiguo Luo
23.   Yi Tang
24.   Xuezhen Cai
25.   Jingqiu Tang
26.   Qu Chen
27.   Yue Zhang
28.   Sun Zhang
29.   Xiangdong Zhu
30.   Yaohua Lin
31.   Jiancheng Chen
32.   Min Deng
33.   Liying Mao
34.   Zhongguo Feng
35.   Liying Yang
36.   Dan Wu
37.   Ying Ding
38.   Hanjiang Fu
39.   Yuan Yuan
40.   Hanjiang Fu
41.   Hua Cai
42.   Ruiling Xiao

43. Chenchen Jiang
44. Pengfei Dong
45. Xiaodong Hao
46. Xiaoquan Dai
47. Jialin Hu
48. Heng Zhang
49. Fang Ding
50. Lin Gao
51. Fei Gao
52. Qin Chu
53. Gang Xu
54. Ling Guan
55. Chao Xu
56. Weipeng He
57. Jianjin Li
58. Zhenhua Li
59. Qiao Qin
60. Ying Zhang
61. Jiaxiang Lu
62. Weijia Kong
63. Li Jang
64. Li wen Bian
65. Jun Li
66. Youhong Zhu
67. Rongping Wu
68. Yadan Liu
69. Rufeng Ding
70. Lin Zhou
71. Jinghui Ma
72. Yun Sun
73. Guoqin Zhou
74. Qiuying Li
75. Bingjie Xu
76. Shufang Luo
77. Tianqing Song
78. Ping Chen
79. Di Tang
80. Jin Wang
81. Fuqing Chen
82. Kui Wang

83. Weisi Wang
84. Yi Qu
85. Xiaomin Fan
86. Cunxiang Ji
87. Jinzhe Wu
88. Ruinian Wu
89. Wen Wu
90. Ou Jiang
91. Feng Yan
92. Mai Ye
93. Wenjuan Yin
94. Kai Tian
95. Ling Zhong
96. Sicheng Zhan
97. Yan Zhang
98. Ying Zhou
99. Jun Zeng
100. Peng Guo

65. JMJ Acquisitions LLC, receivership entity

66. JMJ Development LLC, receivership entity

67. JMJ Hospitality, LLC, receivership entity

68. JMJ VC Management, LLC, receivership entity

69. JMJAV, LLC, receivership entity

70. JMJD4, LLC (Delaware), receivership entity

71. JMR100 LLC, receivership entity

72. Johnson Vaughn & Heiskell, counsel for defendant Stephen T. Wall

73. Johnston Clem Gifford PLLC, counsel for interested party Truist Bank

74. Kane Russell Coleman & Logan PC, counsel for interested party HNGH Turtle Creek, LLC

75.     Kane, John J., counsel for interested party HNGH Turtle Creek, LLC

76.     Kearns, David T., counsel for interested parties Maximilien Barton, MXBA LLC, and TRTX Properties LLC, and receivership entities Gillespie Villas LLC, TC Hall, L.L.C., Titan Investments LLC, a/k/a Titan 2022 Investments, LLC, and Venus59 LLC

77.     Kirkland & Ellis LLP, counsel for interested party HNGH Turtle Creek, LLC

78.     Kleinsasser, Matthias, counsel for interested party Vertical Street Ventures, LLC

79.     Koonce, Charlene C., counsel for receiver Cortney C. Thomas

80.     Lajolla Construction Management LLC, receivership entity

81.     Law Office of Robert W. Buchholz PC, counsel for interested party Southern Star Capital LLC

82.     LC Aledo TX, LLC, receivership entity

83.     LDG001, LLC, relief defendant and receivership entity

84.     Lesser, Joshua A., counsel for interested party Bank of America, N.A.

85.     Light, Barbara, counsel for interested parties Maximilien Barton, MXBA LLC, and TRTX Properties LLC, and receivership entities Gillespie Villas LLC, TC Hall, L.L.C., Titan Investments LLC, a/k/a Titan 2022 Investments, LLC, and Venus59 LLC

86.     Louisiana National Bank, interested party

87.     Lynco Ventures, LLC, receivership entity

88.     Mansion Apartment Homes at Marine Creek, LLC, receivership entity

89.     Marine Creek SP, LLC, receivership entity

90.     McCormick 101, LLC, interested party

91.   MFO Venus Development, LLC, interested party

92.   MO 2999TC, LLC, receivership entity

93.   Moeller, Evan A., counsel for interested party Bank of America, N.A.

94.   Moss & Associates, LLC, counsel for interested party MFO Venus Development LLC

95.   Munsch Hardt Kopf & Harr, P.C., counsel for interested party The Dixon Water Foundation

96.   MXBA LLC, interested party

97.   Nealy Cox, Erin, counsel for interested party HNGH Turtle Creek, LLC

98.   Norman, Brian K., counsel for interested party Southern Properties Capital, Ltd.

99.   Norris, Jeffrey Blair, counsel for interested party Southern Properties Capital, Ltd.

100.  Northstar PM, LLC (Texas), receivership entity

101.  Norton Rose Fulbright US LLP, counsel for interested parties Maximilien Barton, MXBA LLC, and TRTX Properties LLC, and receivership entities Gillespie Villas LLC, TC Hall, L.L.C., Titan Investments LLC, a/k/a Titan 2022 Investments, LLC, and Venus59 LLC

102.  O'Connell, Sean B., counsel for defendant-appellant Timothy Barton

103.  Orchard Farms Village LLC, receivership entity

104.  Palisades-TC, LLC, interested party

105.  Patton, Jonathan R., counsel for interested party Palisades-TC, LLC

106.  Peckar & Abramson, counsel for interested parties Moss & Associates, LLC and MFO Venus Development, LLC

–ix–

107. Perry, Deborah M., counsel for interested party The Dixon Water Foundation

108. Pioneer Finance, Inc., interested party

109. Polsinelli PC, counsel for interested party McCormick 101, LLC

110. Ramer, Samuel, counsel for interested parties Maximilien Barton, MXBA LLC, and TRTX Properties LLC, and receivership entities Gillespie Villas LLC, TC Hall, L.L.C., Titan Investments LLC, a/k/a Titan 2022 Investments, LLC, and Venus59 LLC

111. Ramolia, Dhiraj, interested party

112. Ridgeview Addition, LLC (Texas), receivership entity

113. Roossien, Jr., Dennis L., counsel for interested party The Dixon Water Foundation

114. Rose, Shirley B., counsel for interested party Texas Republic Bank, N.A.

115. Scheef & Stone, L.L.P., counsel for interested party interested party Texas Republic Bank, N.A.

116. Schurr, Patrick J., counsel for interested party interested party Texas Republic Bank, N.A.

117. Scott, John B., counsel for interested party Pioneer Finance, Inc.

118. Scott & Scott, PLLC, counsel for interested party Pioneer Finance, Inc.

119. Seagoville Farms, LLC, receivership entity

120. Securities and Exchange Commission, plaintiff-appellee

121. SF Rock Creek, LLC, receivership entity

122. Shamoun & Norman, LLP, counsel for interested party Southern Properties Capital, Ltd.

123.  Shamoun, C. Gregory, counsel for interested party Southern Properties Capital, Ltd.

124.  Shavin, Eliot Dana, counsel for interested party Dhiraj Ramolia

125.  Sosland, Martin Allen, counsel for interested party Louisiana National Bank

126.  Southern Properties Capital, Ltd., interested party

127.  Southern Star Capital LLC, interested party

128.  Spector & Cox, PLLC, counsel for interested parties Tamamoi, LLC and 3820 Illinois, LLC

129.  Spector, Howard Marc, counsel for interested parties Tamamoi, LLC and 3820 Illinois, LLC

130.  Tamamoi, LLC, interested party

131.  TC Hall, LLC, receivership entity

132.  Texas Republic Bank, N.A., interested party

133.  The Dixon Water Foundation, interested party

134.  Thomas, Cortney C., receiver

135.  Tillotson Johnson & Patton, counsel for interested party Palisades-TC, LLC

136.  Titan Investments LLC, a/k/a Titan 2022 Investments, LLC, receivership entity

137.  TRTX Properties LLC, interested party

138.  Truist Bank, interested party

139.  United States of America, intervenor

140.  Venus59 LLC, receivership entity

141.  Vertical Street Ventures, LLC, interested party

142.  Villita Development, LLC, receivership entity

143.  Villita Towers LLC, receivership entity

144.  Wall, Stephen T., defendant

145.  Wall007, LLC, defendant and receivership entity

146.  Wall009, LLC, defendant and receivership entity

147.  Wall010, LLC, defendant and receivership entity

148.  Wall011, LLC, defendant and receivership entity

149.  Wall012, LLC, defendant and receivership entity

150.  Wall016, LLC, defendant and receivership entity

151.  Wall017, LLC, defendant and receivership entity

152.  Wall018, LLC, defendant and receivership entity

153.  Wall019, LLC, defendant and receivership entity

154.  Waller, Greg, counsel for Hunton Andrews Kurth LLP, counsel to defendant-appellant Timothy Barton

155.  Wells, Tim, counsel for receiver Cortney C. Thomas

156.  Wielebinski, Joe, counsel for interested party Vertical Street Ventures, LLC

157.  Winstead PC, counsel for interested party Vertical Street Ventures, LLC

158.  WRL2019, LLC (Texas), receivership entity

*/s/ Charlene C. Koonce*
Charlene C. Koonce

*Attorney of Record for*
*Receiver Cortney C. Thomas*

# TABLE OF CONTENTS

I.     IDENTITY AND INTEREST OF AMICUS CURIAE ...................................1

II.    AUTHORITY TO FILE AMICUS CURIAE BRIEF ...................................1

III.   RULE 29(a)(4)E STATEMENT ....................................................................2

IV.    INTRODUCTION .........................................................................................3

V.     ARGUMENT..................................................................................................5

       A.    The District Court Exercised Rather than Abandoned Its
             Discretion ...........................................................................................5

       B.    Barton Lacks Credibility .....................................................................6

       C.    The District Court Appropriately Concluded a Clear Necessity
             for a Receivership Existed...................................................................7

       D.    The Scope of the Receivership Complies with *Barton* and Does
             Not Reward Fraud and Comingling ...................................................10

             1.    *In Rem* Jurisdiction Does Not Inform Scope ...........................10

             2.    The District Court Acted Within its Discretion in
                   Determining Which Entities to Include in the
                   Receivership................................................................................11

                   a.    The Tracing Was Reliable But Not Exhaustive .............12

                   b.    Barton's Complaints That Certain Properties
                         Didn't Benefit Enough or For Long Enough Are
                         Meritless ......................................................................14

                   c.    Ample Evidence and Discretion Support Inclusion
                         of Each Entity in the Receivership ...............................16

       E.    Receiver Selection, Competence, Work and Compensation ..............20

       F.    No Error In Ratifying Certain Orders ................................................24

       G.    The District Court Did Not Err in Approving Real Property
             Sales...................................................................................................25

1. The District Court Continues to Possess Jurisdiction and Authority to Administer the Estate and Approve Sales, if Necessary. ...............................................................................25

2. Sales Seek to Preserve Eroding Value ....................................26

H. This Court Lacks Jurisdiction to Review Orders Approving Real Property Sales, and Barton's Serial Appeals Continue to Damage the Estate ............................................................................28

I. The Current Status of the Receivership and the Effect of the Relief Barton Seeks .........................................................................30

VI. CONCLUSION.................................................................................32

# TABLE OF AUTHORITIES

**Cases**

*Beard v. Bell,*
  47 F.3d 426 (5th Cir. 1995)...............................................................................6

*FDIC v. Faulkner*,
  991 F.2d 262 (5th Cir. 1993)............................................................................16

*FTC v. Affordable Media*,
  179 F.3d 1228 (9th Cir. 1999) ...........................................................................3

*Janvey v. Democratic Senatorial Campaign Comm., Inc.*,
  712 F.3d 185 (5th Cir. 2013).............................................................................11

*Matter of McGaughey,*
  24 F.3d 904 (7th Cir. 1994) ...............................................................................9

*Netsphere, Inc. v. Baron*,
  703 F.3d 296 (5th Cir. 2012)..............................................................................6

*Netsphere, Inc. v. Baron*,
  799 F.3d 327 (5th Cir. 2015).............................................................................28

*Roman Catholic Archdiocese of San Juan, Puerto Rico v. Acevedo Feliciano*,
  140 S. Ct. 696, 206 L. Ed. 2d 1 (2020)............................................................25

*SEC v. Camarco*,
  No. 19-1486, 2021 WL 5985058 (10th Cir. Dec. 16, 2021)..............................15

*SEC v. Complete Bus. Sols. Group, Inc.*,
  44 F.4th 1326 (11th Cir. 2022) .........................................................................29

*SEC v. Dobbins*,
  No. CIV.3:04-CV-0605-H, 2004 WL 957715 (N.D. Tex. Apr. 14, 2004)..........31

*SEC v. Equitybuild, Inc.*,
  101 F.4th 526 (7th Cir. 2024).............................................................................9

*SEC v. Equitybuild, Inc.*,
  No. 21-2664, 2021 WL 745317 (7th Cir. Nov. 4, 2021) ......................................9

*SEC v. First Fin. Group of Tex.*,
  645 F.2d 429 (5th Cir. 1981)................................................................................6

*SEC v. Quinn,*
  997 F.2d 287 (7th Cir.1993)................................................................................31

*SEC v. Safety Fin. Service, Inc.*,
  674 F.2d 368 (5th Cir. 1982)..............................................................................25

*SEC v. Stanford Int'l Bank, Ltd.*,
  927 F.3d 830 (5th Cir. 2019)...................................................................... 5, 10, 30

*Thompson v. Phenix Ins. Co.*,
  136 U.S. 287 (1890).............................................................................................11

*United States v. Antiques Ltd. P'ship*,
  760 F.3d 668 (7th Cir. 2014)..............................................................................29

*Zacarias v. Stanford Int'l Bank, Ltd.*,
  945 F.3d 883 (5th Cir. 2019)..............................................................................21

## I.     IDENTITY AND INTEREST OF AMICUS CURIAE

Amicus Curiae Cortney C. Thomas is the court-appointed Receiver ("Receiver") in this case, who serves as the District Court's agent.  These consolidated appeals include challenges to orders issued in response to motions filed by the Receiver rather than either party to these appeals.

## II.     AUTHORITY TO FILE AMICUS CURIAE BRIEF

This Amicus Brief is desirable and relevant to the disposition of the case as required by Appellate Rule 29(a)(3)(B).  In two consolidated appeals, Appellant Barton ("Barton") challenges the propriety of several orders, including an Order Appointing Receiver (the "Order" or "Receivership Order"), an order ratifying administrative orders governing the receivership (the "Ratification Order") and orders approving sales of property ("Sale Orders"), and other orders. As revealed by the absence of supporting record references or misleading record references throughout his brief, truth has limited relevance in many of Barton's arguments.  The Receiver is uniquely qualified to respond to Barton's false assertions, including the sufficiency and reliability of evidence related to the entities and properties included in the receivership, the necessity and scope of a receivership, the impact of the relief Barton seeks, and Barton's false assertions about the Receiver's honesty, motivation, and competence.

Additionally, although this appeal and No. 24-10004 consolidated herein include challenges to certain orders issued based on the Receiver's motions (the Ratification Order and the Sales Orders), in prior but related appeals the Receiver was denied leave to participate directly but possesses the most current and relevant information and evidence demonstrating why these Orders were in the best interest of the Receivership Estate.  He is thus uniquely situated to address the propriety of these Orders, including the timing and necessity of the relief obtained, the risk of harm to Receivership Assets[1] absent the relief granted by the District Court, and the prejudice caused by Barton's repeated, improper interlocutory appeals.  The victims of Barton's investment activities are most impacted by the serial appeals and resulting delays, and the Receiver is best situated to speak on their behalf.

### III.    RULE 29(a)(4)E STATEMENT

This Amicus Curiae Brief was prepared entirely by the undersigned counsel and the Receiver.  The undersigned certifies that: (i) no party's counsel authored this brief in whole or in part; (ii) no party or party's counsel contributed money that was intended to fund preparing or submitting the brief; and (iii) no person contributed money that was intended to fund preparing or submitting the brief.  (The Receiver's and his counsel's fees are paid from Receivership Assets, but, as of the date of this

---

[1] Undefined capitalized terms have the same meaning ascribed in briefing in the District Court.

Brief, neither the Receiver nor his counsel have been paid for any work performed after March 31, 2023).

## IV.   INTRODUCTION

"An old adage warns that a fool and his money are easily parted. This case shows that the same is not true of a district court judge and his common sense." *FTC v. Affordable Media*, 179 F.3d 1228, 1231 (9th Cir. 1999).   Barton swindled investors (the "Investors") and used investor funds ("Investor Funds") to speculate in raw land unrelated to the intended investments and to fund his lavish lifestyle. **ROA.167**; **212-216; 10318**.[2]   He used more than one hundred entities, money-laundering transactions, and dense and extensive commingling to hide his misappropriation.   **ROA.10240-10241**. As he has repeatedly in the District Court, here he uses half-truths and outright lies to challenge imposition of a receivership. Through blatant contempt he also sought to preclude the Receiver from obtaining and providing the evidence that supports the remedies the District Court deemed necessary and appropriate. **ROA.7463-7473.**

The District Court concluded, albeit tardily, that the first receivership order was justified, even under the *Netsphere* test. **ROA.3102-3103; 3110**.  In reversing the first Receivership Order, however, this Court concluded it could not consider that analysis and could "not say whether" the trial court abused its discretion in

---

[2] Unless indicated otherwise, all record references are to the record in Appeal No. 23-11237.

entering the first Receivership Order.[3]  This Court vacated the first receivership order but stayed vacatur for ninety days to avoid the chaos, waste, and misappropriation that would have ensued had the first Order been void while the District Court considered whether to issue a new order.  *Barton*, pp. 581-82.[4]

After carefully reviewing reams of evidence, hours of testimony, and Barton's repeated false statements in dozens of briefs and motions, the District Court again exercised its discretion to preserve the only assets available to satisfy any final judgment and compensate the defrauded Investors, by appointing an independent receiver, selected by the District Court rather than one proposed by the Commission. As this Court implicitly recognized by staying vacatur, the evidence warranted the extraordinary relief of a receivership.  The additional evidence considered by the District Court on remand (rather than Barton's inaccurate characterizations of it) likewise justify the new Order.  On this record, this Court should conclude no abuse of discretion or other error occurred with respect to the new Receivership Order.

Additionally, Barton also appeals several other orders issued by the District Court.  Not only do these interlocutory appeals lack jurisdiction, but they also have imposed and continue to impose significant prejudice to the Receivership Estate.  In

---

[3]*See* Appeal No. 22-11132 (*SEC v. Barton,* 79 F.4th 573, 579-580 (5th Cir. 2023) (hereafter, "*Barton*")).

[4] *See also*, Appeal No. 22-11132, Doc.5, pp. 20-22.

–4–

essence, these other appeals have practically given Barton the very same stay that both this Court [**ROA.9879**] and the District Court [**ROA.3096**] have denied repeatedly. The improper interlocutory appeals of sale orders in particular have resulted in the loss of millions of dollars in equity in commercial real estate assets that are encumbered by sizeable loans. This Court should address and prohibit these baseless serial appeals.

## V.    ARGUMENT

## A.    The District Court Exercised Rather than Abandoned Its Discretion

The District Court possessed broad discretion in the fact-based determinations which governed the clear necessity of a receivership and evaluation of which entities "received or benefited from" Investor Funds[5] and thus fell within the scope of a receivership. *See SEC v. Stanford Int'l Bank, Ltd.*, 927 F.3d 830, 840 (5th Cir. 2019). Its treatment of objections[6] and the previously expressed frustration with Barton's "unsupported assertions and outright misrepresentations," [**ROA.3097**] reveal appropriately exercised discretion in weighing the credibility and reliability of the witnesses, and in determining whether the three *Netsphere* factors were satisfied and which entities should be included in the receivership. **ROA.14773-14792**; *see*

---

[5] *Barton* pp. 579, 580.

[6] The court explained and repeatedly responded to evidentiary objections by noting the evidence would be afforded "the weight to which it is due." **ROA.15278-15279; 15288; 15292; 15295; 15299; 15305; 15306; 15309-15310; 15333; 15356; 15366-15367; 15383; 15384; 15385; 15395; 15396; 15407; 15429**.

*Netsphere, Inc. v. Baron*, 703 F.3d 296, 305 (5th Cir. 2012) (requiring "clear necessity" for receivership, inadequacy of other remedies and balance of harm); *SEC v. First Fin. Group of Tex.*, 645 F.2d 429, 439 (5th Cir. 1981) (appointment of receiver is an ancillary remedy within the court's discretion).  Barton's conduct, including his contempt for refusing to provide financial information necessary for more comprehensive tracing, also properly informed the District Court's discretion with respect to the same factors. *See* **ROA.14775**.  Thus, the District Court's acceptance of the Commission's evidence and arguments demonstrates an embrace rather than abandonment of discretion.

## B.    Barton Lacks Credibility

Although this Court weighs neither evidence nor credibility and affords great deference to the District Court on such issues,[7] the Court should, however, acknowledge that as in many, many prior instances,[8] Barton's arguments are unsupported or refuted by the record. His repetition of various false or fabricated facts underscores the District Court's finding that Barton relies on "unsupported assertions and outright misrepresentations." **ROA.3097**.  Mindful of the word limit,

---

[7] *See Beard v. Bell,* 47 F.3d 426 (5th Cir. 1995).

[8] *See* **ROA. 3014-3023; 4293-4304**; *see also* Appeal 22-11132, Doc. 110-1 (denying Barton's motion that lacked Rule 27.3 certification), Doc. 113-2, p. 2 (noting a false statement in Barton's renewed motion); and Doc. 112 (detailing Barton's many falsehoods), and Doc. 05 (Receiver's Opposition to Barton's Motion to Stay, also discussing many misrepresentations in support of Barton's first motion to stay).

the Receiver can address only a few of the most egregious inaccuracies, for example,

Barton's characterization of his unauthorized use of Investor Funds as legitimate

"inter-company loans,"[9] which ignores: (a) the millions of investor dollars used for

personal purposes; **ROA.10319-10320**; (b) financial records suggesting money

laundering rather than legitimate transactions **ROA.10242**; and, (d) the absence of

any loan documents. **ROA.15424**; **15331** ("I haven't seen any documentation of any

inter-company loans.").

## C.    The District Court Appropriately Concluded a Clear Necessity for a Receivership Existed.

In concluding the three fact-based *Netsphere* factors were satisfied, the

District Court followed the standard delineated by this Court.   As the Receiver

explained in his Report:

- The properties in the receivership have less equity than the total claims (and less every day).[10] **ROA.10321**; **10324**. In asserting otherwise, Barton ignores the substantial debt that encumbers all but one property, as well as the disputed ownership of several of the most valuable properties held by the D4 Entities.[11] **ROA.10315-10316**; *see also* **ROA.14795** (substantial risk that insufficient assets exist to satisfy potential disgorgement).  Indeed, the Receiver's summary analysis of value, **ROA.10316-10317 (¶ 196)**, did

---

[9] *Brief,* p. 6.

[10] The Receiver's comparison of potential property value with the amount of the Investor losses, **ROA. 10314-10317** does not account for the cost of administering the receivership, which in large part because of Barton's objection to *every single motion filed by the Receiver* save two, has been and will continue to be, substantial.

[11] Barton has made this assertion numerous times and the District Court has rejected it, numerous times. *See* **ROA.1365; 1382; 2572-2573; 3096.**

not account for another year of accruing interest and another $2,000,000 in lost value;[12]

- Several properties require active management or supervision, for instance the Amerigold Suites, sale of which Barton has effectively blocked twice, and the apartment developments owned by the "D4 Entities"; **ROA.10329-10330; 14775-14776**; and

- All properties are at risk of foreclosure. **ROA.14773**. The initial Receivership Order stayed multiple imminent foreclosure sales, **ROA. 3250**, although 4 creditors have since sought leave to lift the stay imposed by the Receivership Order and proceed with foreclosure. **ROA.7640; 10490; 12438; Dkt. 498.**[13] Creditors have and continue to confer with the Receiver regarding similar motions and threats.[14]

At the time of the Receiver's initial appointment, thirty days after the SEC moved for appointment of a receiver, Barton had stripped virtually all cash from the bank accounts of the entities that had received or benefited from Investor Funds, and several properties were in disrepair or dangerous to residents or citizens **ROA.10318-10321**; Dkt. 498 at 4. *After* the SEC filed its motion seeking a receiver, Barton also spent at least $225,000 traceable to Investor Funds. **ROA.10318**. Barton habitually encumbered or transferred properties purchased with Investor Funds, and indeed disregarded orders to refrain from doing so. **ROA.2781-2783;**

---

[12] Dkt. 528 at 10.

[13] References to docket entries in the District Court created after the Record was prepared are referenced above as "Dkt. _."

[14] *See* **ROA.10332 (¶ 236)**; *see also*, Dkt. 508 at 1.

**7463-7473; 10318-10321**. These facts demonstrate a clear necessity for a receivership.

On the other hand, "risk of asset flight," a potential basis for an injunction, has never been the sole justification for a receivership.[15]   Receiverships *are* appropriate to protect and preserve real estate, if management is required, value is diminishing, or a risk of further dissipation or waste exists.  For example in *SEC v. Equitybuild, Inc.,* a case pending in the United States District Court for the Northern District of Illinois, the District Court appointed a Receiver to "marshal, preserve, and protect," dozens of real properties obtained by the defendants through a fraudulent real estate investment scheme, where "Defendants cannot be trusted to continue to manage these properties or to liquidate them or other assets for their victims' benefit."[16] *See also Matter of McGaughey,* 24 F.3d 904, 907 (7th Cir. 1994) (Affirming appointment of receiver as "an especially appropriate remedy in cases involving fraud and the possible dissipation of assets since the primary consideration

---

[15] *See Brief*, p. 52.

[16]*SEC v. Equitybuild, Inc.*, Cause No. 18-CV-5587, pending in the United States District Courty for the N.D.Ill., Dkt. 4 at 17.  The court appointed Kevin Duff, a commercial litigator who had also served ably as a receiver in other matters. The *Equitybuild* case has generated many published or reported opinions regarding the Receiver's administration of that Estate. *See SEC v. Equitybuild, Inc.*, 101 F.4th 526 (7th Cir. 2024); *SEC v. Equitybuild, Inc.*, No. 21-2664, 2021 WL 745317, *1 (7th Cir. Nov. 4, 2021) (dismissing for lack of jurisdiction appeal of order issued in "mid-stream" administration of receivership).

–9–

in determining whether to appoint a receiver is the necessity to protect, conserve and administer property pending final disposition of a suit.").

Barton repeatedly asserts the Receiver and District Court should only preserve the status quo. But that is an injunctive goal rather than the standard governing whether a receivership is necessary or even the primary purpose in creating a receivership. Receiverships instead protect value, actively, in whatever manner and by whatever means is appropriate for the assets at issue.[17] *See* **ROA.14800-14801**; **14813-14815** (Receivership Order, ¶ 6, ¶¶ 37-46, compelling Receiver to actively *change* the status quo). Thus, as the District Court acknowledged in the Order, without a receiver to "manage, maximize, and protect the value of the Receivership Entities' assets," the Investors' interests in the subject properties are "at substantial risk." **ROA.14795**.

### D.   The Scope of the Receivership Complies with *Barton* and Does Not Reward Fraud and Comingling

#### 1.   *In Rem* Jurisdiction Does Not Inform Scope

Barton argues that "because a receivership is a remedy in rem, [a court] may seize the assets of an entity only to the extent it *possesses* the property in question." *Brief*, 25 (emphasis added). That legally flawed assertion mischaracterizes this

---

[17] The necessity of such flexibility explains the breadth of discretion afforded in administering receiverships, *Stanford Int'l Bank, Ltd.*, 927 F.3d at 840, and is likely one reason this Court stayed vacatur of the initial receivership order.

Court's holding and conflates a court's *in rem* jurisdiction over assets in receivership with the jurisdictional basis for a receivership.

Assets in a receivership, including inchoate rights like fraudulent transfer claims frequently asserted by receivers,[18] are held *in rem* by a district court. *See Thompson v. Phenix Ins. Co.*, 136 U.S. 287, 297 (1890) ("The possession of the receiver is the possession of the court; and the court itself holds and administers the estate through the receiver, as its officer, for the benefit of those whom the court shall ultimately adjudge to be entitled to it."). *In rem* possession, however, does not inform whether the assets and entities are the subject of the dispute, i.e., used in connection with Barton's misappropriation of Investor Funds.

### 2. The District Court Acted Within its Discretion in Determining Which Entities to Include in the Receivership

In imposing a receivership over entities it found "received or benefited from assets traceable to Barton's alleged fraudulent activities that are the subject of the litigation," the District Court followed the test this Court defined, which was premised on Barton's prior arguments.[19] **ROA.14778**; *see also*, *Barton*, pp. 580-581.

---

[18] The Receiver has filed lawsuits asserting such claims, which are "property of the estate." *See* **Dkts. 472, 488**; *see also Janvey v. Democratic Senatorial Campaign Comm., Inc.*, 712 F.3d 185, 188 (5th Cir. 2013).

[19] Appeal No. 22-11132, Doc. 51, p. 57. To the extent Barton now complains about the District Court's application of this standard, if any error exists, Barton invited it.

### a.    The Tracing Was Reliable But Not Exhaustive

Barton asserts the Receiver's tracing was performed to further the government's case while also complaining it was unreliable and incomplete.[20] In essence, Barton complains the Receiver has not done enough work, while also complaining that he has done too much.

As the Receiver and his accountant, a CPA with a background in forensic investigations, both testified, a complete forensic accounting was prohibitively expensive at this juncture. **ROA.15337; 15354; 15297-15298.** The analysis instead focused on non-exhaustive *examples* demonstrating Investor Funds or their proceeds flowing into each entity. **ROA.15273; 15339; 15361** ("our analysis was to go find examples [of Investor Funds flowing into each entity] to try to do this in the most economic manner possible"); **ROA.10288**; **15383** (lowest intermediate balance not used because "I wasn't trying to estimate [sic] amount of commingling funds that attributed to investor funds . . . I was trying to show situations where investor funds were sent to a Barton-controlled entity.").  The tracing examples included in the Receiver's Report, discussed at the hearing, and listed in the Order are by no means exhaustive, but were more than sufficient to demonstrate Investor Funds flowing into each entity, and therefore satisfy the standard set in *Barton*.[21]

---

[20] *Brief,* 32-33; 38; 82.

[21] Notably, it is unlikely that any party seeking a receiver to halt fraud and preserve assets could ever satisfy the standard proposed by Barton—a complete forensic accounting tracing every

–12–

Nor are Barton's challenges to methodology supported by the record. Barton's expert admitted he could not opine that any entity into which Investor Funds or their benefit had been traced had *not* received or benefited from Investor Funds, [**ROA.15438**], and also conceded that GAAP, GAAS, or other accounting standards did not apply to a fraud examiners' summary of the flow of funds. **ROA.15442**. Barton's expert admitted "where the money is directly deposited into an account, there is no tracing method." **ROA.15436**.

Barton also ignores his extensive and contumacious efforts to withhold accounting records and information, for example by changing log-in credentials for "Quickbooks;" migrating accounting data to a cloud-based platform once he became aware of the SEC's investigation and withholding the log-in credentials; and instructing the entities' head accountant to refuse to speak to the Receiver, all of which contributed to tracing difficulties. **ROA.3119; 10242; 10248-10249; 10251**. Similarly, Barton's "pervasive and dense" comingling, his practice of funneling Investor Funds from one property to another through transfers made to or by title companies, and his use of loan proceeds from the sale of one property purchased with Investor Funds or their proceeds to purchase another [**ROA.10243-10245**] "rendered a definitive, start-to-finish tracing analysis nearly impossible for many

---

fraudulently obtained dollar to its trial disposition—because such evidence is virtually impossible to obtain at the beginning of a case when the defendant is often busy secreting, spending, or dissipating such assets and hiding that activity from those who have been defrauded.

accounts." **ROA.10243**. Barton's arguments regarding the sufficiency of the Receiver's and his accountant's tracing analysis thus merit no consideration here.

### b. Barton's Complaints That Certain Properties Didn't Benefit Enough or For Long Enough Are Meritless

Barton's arguments about an insufficient quantum of benefit received by any entity—each of which Barton controlled and operated as a collective but unitary sham—as well as arguments regarding seizing a "whole corporate entity" based on an entities' receipt of a *de minimis* benefit, are grossly disingenuous.[22] With the exception of a limited few parent or operating entities, [**ROA.10247-10248**] the vast majority of Receivership Entities are single purpose entities Barton used in (a) dense, extensive, and complex comingling (which rendered tracing nearly impossible in some instances) [**ROA.10242**]; (b) transferring the proceeds of property purchased with Investor Funds through escrow agents to different properties [**ROA.10243-10244**]; and, (c) as individual pieces of a larger sham enterprise [**ROA.10245-10247**] by which Barton now seeks to frustrate investigation into his finances and operation of the Wall Entities. **ROA.10251**. Barton should not succeed in limiting the scope of an equitable receivership based on having purchased only a few Investor properties while seeking to exempt

---

[22] For an exhaustive discussion regarding Barton's control over each of the Receivership Entities included in the first Receivership Order, most of which are included in the current Order, *see* **ROA.741-746; 1399-1918; 1919-2413**.

–14–

properties that he purchased or developed with Investor Funds or that benefitted from Investor Funds, and which are held by single purpose entities he controls. That result encourages fraud and fraudsters. *See, e.g., SEC v. Camarco*, No. 19-1486, 2021 WL 5985058, at \*14 (10th Cir. Dec. 16, 2021) ("[I]mposing [a] strict tracing requirement . . . [would be improper] because a savvy embezzler could quickly spend the money on luxury vacations, secrete ill-gotten funds away in a location or foreign bank account not detectable by authorities, or so commingle tainted funds with untainted funds as to make it impossible to trace the tainted funds to their final resting place.").

Likewise, this Court should not allow Barton to achieve exclusion of entities into which Investor Funds were traced based on his contention that the Receiver has been unable so far to sufficiently unravel *all* comingled transactions. A comprehensive analysis was not required. *See Barton*, pp. 580-581. Further, although this Court previously held "refusal to aid" in identifying which entities to exclude was insufficient to justify a receivership absent a preliminary injunction, *Barton*, at p. 580, the District Court has now entered such an injunction. **ROA.14822**. And, Barton's activities stretch far beyond a "refusal to aid"—he was held in contempt for refusing to provide access credentials to his financial records and other disclosure obligations. **ROA 3119; 7467; 10248-10249; 14775**. Except for email access credentials (Barton did not provide credentials to access

"Quickbooks") his disregard of the Receivership Order continues today. [Dkt. 530].

Barton owns each property and entity he contends is beyond the scope of the Order,

is the origin of the fraud at issue in the SEC's Complaint and has blocked access to

evidence that could provide further clarity regarding the scope of the Order.  Thus,

these additional equitable considerations support inclusion of all properties at issue.

*See*, *e.g.*, *FDIC v. Faulkner*, 991 F.2d 262, 268 (5th Cir. 1993) (no error in freezing

all of defendants' assets where they "refused to aid the district court in tracing").

**c.    Ample Evidence and Discretion Support Inclusion of Each Entity in the Receivership**

First, Barton's assertion that *any* entity included in the receivership has tens

of millions of dollars in net assets[23] ignores the debt that burdens each entity.

**ROA.10315-10316**.  With respect to the D4 Entities that own apartment complexes

(the "D4 Entities"), Barton also ignores the competing claim of ownership asserted

by Southern Property Capital. **ROA.5695-5697; 5698-5755; 7682-7736; 10262-10272; 14797**.  Collectively, all properties in the receivership have less equity than

the amount owed just to the Investors, a metric that ignores the additional $10M

owed to judgment creditors, dwindling equity, and costs of administering the estate.

**ROA.10315-10316**; **14795**; **Dkt. 528 at 6**.

---

[23] *Brief*, 25.

Similarly, Barton's misleading complaints regarding corporate entities that received less than the entity's worth or used the ill-gotten funds for a short period of time[24] focuses on the quantum of assets received rather than the governing standard—entities that received or benefited from assets traceable to the "subject of the litigation." *See Barton*, pp. 580-581. Barton argues, essentially, that he didn't use some entities enough in his fraud to justify their inclusion in the receivership. As demonstrated by the Receiver's lengthy Declaration and testimony, however, whether through design, status as single purpose entities, timing in the course of the fraud, or mere happenstance, all of the Barton-controlled entities included in the receivership received or benefited from Investor Funds and are thus the subject of the SEC's claims. **ROA.10242.** The District Court did not include entities that were merely "parent" or other "pass through" entities that did not receive Investor Funds; it included entities that Barton used in conducting the fraud which is the subject of the litigation and which "received or benefited from" assets traceable to Barton's fraud. **ROA.14778.**

Barton's argument that the District Court held that "every dollar spent by . . . [JMJ Development] was tainted, whether it came in form of a salary benefit or the advance of funds,"[25] is a bald lie, refuted by the Order and the underlying record.

---

[24] *Brief,* 25.

[25] *Brief*, 45.

The District Court *could not* have concluded that everything any entity, including JMJ, "spent" after receiving Investor Funds was "tainted" because the Receiver, the SEC's staff accountant, and the Receiver's accountant rejected that specific assertion. **ROA.15333-15338**. Instead, the "received or benefited" analysis rested on evidence that specific Investor Funds traced to JMJ were traced into other entities. **ROA.15333-15334**. The District Court carefully referenced examples of Investor Funds traced into each entity, **ROA.14783-14785**, relying on testimony in which the Receiver, his accountant, and the Commission's accountant demonstrated the falsity of Barton's "operating assumption" argument, that any money spent by JMJ was tainted with lender funds." **ROA.15334-15335; 15367-15368; 15398-15399**.

Barton's assertion that "zero evidence" supports the District Court's conclusion that the "apartment complex companies," (the "D4 Entities") would not have received the HUD loans necessary for their existence without using properties purchased with lender funds, *Brief*, 44, is also false. The Receiver's Report included detailed information about the use of properties purchased with Investor Funds on the certified HUD Personal Financial and Credit Statements used to obtain the four, multi-million-dollar HUD loans. **ROA.10264-10265**. If those Investor-funded properties were unnecessary to obtaining the HUD loans, Barton would not have included them in the certified applications that he submitted under penalty of prosecution.

Similarly, Barton's assertion that D4IN was included solely because JMJ "paid the salary of an employee who filled out paperwork,"[26] ignores the District Court's conclusion that the D4 Entities secured HUD loans by relying on assets purchased with Investor Funds. **ROA.14782**. Without the HUD loans the properties owned by those entities would not exist. **ROA.14782**. Indeed, Barton initially complained the Receiver was not moving fast enough to sell the properties owned by the "D4 Entities," [**ROA.3641-3643**] a near judicial admission regarding inclusion of these properties within the scope of the receivership.

Barton's complaints about the sufficiency of tracing to FHC Acquisitions, LLC,[27] are equally disingenuous since the Receiver and the Commission traced Investor Funds directly to the entity. **ROA.10260; 10353-10354; 10487**. Barton also brought the buyer of the entity's property to the Receiver and complained the Receiver was not closing a sale fast enough. **ROA.3061.**

The FHC example in particular demonstrates Barton's willingness to obfuscate the truth in his attacks on the District Court's analysis. Barton complains specifically of "intervening deposits" totaling $2.917 million received by Receivership Entity Broadview Holdings between March 24, 2022, when it received $232,000 in investor funds, and March 29, 2022, when it sent $168,146.67 to FHC

---

[26] *Brief*, 21.

[27] *Brief*, 46.

Acquisitions.[28]   Barton claims these funds are "entirely unrelated to any lender funds" and "18 times the outflow the Receiver claims was tainted."  However, (1) Barton's reliance on "2.917 million" is inaccurate because the "intervening deposits" totaled $2.635 million, [**ROA 16080**]; (2) $2.5 million of the $2.635 million in "intervening deposits" flowed right back out of the Broadview Holdings Account, days before the transfer to FHC relied on by the Receiver in his tracing, [**ROA.15449; 16080-81**]; (3) the $2.5 million was from a refinance of property owned by Receivership Entity LDG001, LLC in Venus, Texas which itself was tainted with Investor Funds [**ROA.10374; 10383**]; and (4) the District Court has already considered and rejected Barton's faulty premise and exercised its discretion in rejecting it.  **ROA.14780**.

Each shotgun objection raised by Barton with respect to the District Court's analysis and conclusion that the entities included in the receivership received *and* benefited from Investor Funds is similarly belied by the evidence, or merely a baseless attack on the District Court's discretion.

## E.    Receiver Selection, Competence, Work and Compensation

Barton's complaints about the bias, competency, motivation, and compensation of the Receiver similarly rest on false assertions.  First, the District Court rejected the Commission's receiver candidate and independently selected Mr.

---

[28] *Brief*, 47.

Thomas because it sought "separation" between the receiver and the SEC. **ROA.15171**. Indeed, the Receiver is the District Court's agent, not an ancillary arm of the SEC, and receives any authority he possesses solely from the court. *Zacarias v. Stanford Int'l Bank, Ltd.*, 945 F.3d 883, 896 (5th Cir. 2019) ("The receiver is . . . an officer or arm of the court . . . appointed to assist the court in protecting and preserving, for the benefit of all parties concerned, the properties in the court's custody") (internal quotation and alteration omitted)). Thus, the Receiver was not analyzing financial records and preparing reports in aid of the SEC's case or to "strenuously advocate" for his reappointment. *Brief,* 10. His financial analysis and Report were required by the original Receivership Order[29] and a subsequent order [**ROA.660; 45**[30]] and prepared because the Receiver knew the best interests of the Receivership Estate required "maximizing and accurately identifying the assets included in the Receivership Estate." **ROA.10240**.

Second, the Receiver's experience as a seasoned litigator has been far more important than real estate development experience. Instead of nearly completed developments requiring just a guiding hand to cross the finish line, most properties are raw land embroiled in litigation or near foreclosure. **ROA.15327.** An

---

[29] The Receiver was directed to investigate "the manner in which the financial and business affairs of the [Initial] Receivership Entities were conducted." **ROA.660.**

[30] An electronic order entered in the docket as text only, at Dkt. 305, reflects the District Court's order for the Receiver to prepare a Declaration regarding information obtained after the case was filed relevant to a new receivership order. **ROA.45.**

–21–

experienced litigator (and receiver), equipped to manage the litigation resulting from Barton's opposition to virtually every motion, his use of litigation as a business tactic, and indeed the litigation with creditors and third parties who claim ownership of some properties,[31] possesses all skills necessary to preserve the value of receivership assets and properties while serving the District Court as outlined in the Order.  A receiver also has the ability to hire experts and obtain specialized guidance when necessary. **ROA.646**.

Further, the Receiver *has* continued overseeing progression of the few properties for which "development" had progressed at the time of his appointment beyond hope and a prayer.[32] Barton's  complaints about the Receiver's failure to continue developing or rehabilitate properties,[33] however, must be viewed against the dearth of liquid assets necessary to accomplish that work, which results largely from Barton's jurisdiction-less appeals of orders approving sales discussed below.

 Nonetheless, leaning on his deep business connections, the Receiver has obtained development, management, and sales guidance, when necessary, from industry professionals, often at no charge.  **ROA.10250; 15319-15320; 16327-**

---

[31] **ROA.1399; 2581-2582; 2706; 5698; 10490; 12438; 14320; 14660; 14666; 14719.**

[32] For instance, within days of his appointment, the Receiver learned that one of the HUD Apartments, owned by D4OP LLC, was in the final stages on construction and cost certification with HUD.  **ROA.13843-13849**.  The Receiver shepherded this property through cost certification with incomplete records (while Barton refused to cooperate) and continues to regularly correspond with HUD, the lender, and auditors on the HUD Apartments. **ROA.13843-13849**.

[33] *Brief,* 62.

**15328.** Rather than speculating in development, however, he has continued working to fulfill the purpose of his appointment: preserving and maximizing the value of the receivership estate. **ROA.15350.** Accordingly, the Receiver has attempted to preserve value by selling properties to stop the accrual of interest on liens that drain equity and recover cash necessary to continue the maintenance and preservation of other properties. **ROA.15009**; *see also*, **Dkt. 528**.

The work required to comply with the Receivership Order and additional orders has been extensive and time-consuming although all time by the Receiver, his counsel, and accountants has been billed at discounted rates. Indeed, the Receiver's billable rate is 33% lower than his standard rate and his lead counsel's rate is likewise 85% of her standard rate.[34] Further, despite his ad hominin attacks and sarcasm suggesting an improper financial motivation, Barton knows the Receiver, his counsel, and accountants have not been paid for any time incurred after March 31, 2023, including the time necessary to prepare the extensive Report and testify at the hearing and to prepare this brief.[35] **ROA.46 (Dkt. 306); Dkt. 539**.

---

[34] *Compare* the Receiver's $385.00 rate with the Receiver's billable rate in *SEC v. Agridime LLC, et al.,* Case No. 4:23-cv-1224, (N.D. Tex.) ($1,395 hourly rate); *SEC v. Heartland Group Ventures, LLC et al.,* Case No. 4:21-cv-1310, (N.D. Tex.) ($675 hourly rate).

[35] On July 26, 2024, the Receiver filed a fee petition seeking authorization to pay fees incurred between April 1, 2023 and June 30, 2023. **Dkt. 539.** As of the date of this Brief, the petition is pending.

Indeed, as reflected in the docket below, more than 88 motions, briefs, responses, replies and reports have been prepared by the Receiver since March 31, 2023, all without payment. That work, like all work since Barton began filing his jurisdiction-less appeal of orders approving sales, was performed with knowledge that payment may *never* be made. Because of the amount of time necessary to perform the work, however, the Receiver has had to turn away other full-fee work. **ROA.15348-15348**.

**F.    No Error In Ratifying Certain Orders**

In contending the District Court erred in ratifying prior orders based on a new receivership order because the prior order had been vacated, Barton raises a circular argument. *Brief,* 77-78; *see also* **ROA.14835**.

Based on the initial Receivership Order, the Receiver performed extensive work, including identifying and taking possession of property, mail, and records; engaging professionals; and staying more than thirty lawsuits and numerous foreclosures. **ROA.1240; 10236-10238; 14794; 14835**. He attempted to preserve the value of assets by converting some to cash through sales and settlements; paid taxes and insurance; opened a bank account; entered into numerous contracts; and paid certain fees and expenses. *See* **ROA.13810**; *see also* **ROA.714;** 1**226; 2824; 3096; 7197; 7463; 7474; 2781; 5628; 9977**. While this Court's vacatur, stayed for 90 days, potentially rendered every order issued in reliance on the first order void

(or at least created concern regarding the continued viability of those orders) the vacatur did not erase the activities that had occurred or negate their necessity. If the District Court was inclined to create a new receivership it was therefore entitled to ratify and "bless" any of those prior orders and activities based on the new Order. *See Roman Catholic Archdiocese of San Juan, Puerto Rico v. Acevedo Feliciano*, 140 S. Ct. 696, 700–01, 206 L. Ed. 2d 1 (2020) (District courts are permitted to enter "nunc pro tunc" orders to "reflect the reality of what has already occurred.") (internal quote omitted)). Indeed, judicial efficiency, asset preservation, and common sense mandated such an order. *See*, *e.g.*, *SEC v. Safety Fin. Service, Inc.*, 674 F.2d 368, 372 (5th Cir. 1982) ("Any action by a trial court supervising an equity receivership is committed to his sound discretion and will not be disturbed unless there is a clear showing of abuse").

**G.    The District Court Did Not Err in Approving Real Property Sales**

**1.    The District Court Continues to Possess Jurisdiction and Authority to Administer the Estate and Approve Sales, if Necessary.**

Barton's challenges to the District Court's continued jurisdiction to administer the Receivership, including as necessary to preserve value by converting wasting assets to cash, are meritless. District courts are imbued with broad discretion to administer receiverships, even during the pendency of an appeal, and they are no more divested of jurisdiction to continue doing so than they are subject to a stay absent an order imposing one. The Receiver incorporates his extensive arguments

from prior briefing on these issues, including references to this Court's denials of Barton's prior efforts to stay continued activity (including sales) in the District Court, which necessarily demonstrate continued jurisdiction below. *See* Dkt. 513, 528; *see also* **ROA**.**15082**; and Appeal No. 22-11132, Doc. 5.

### 2. Sales Seek to Preserve Eroding Value

Barton has played the lottery with Investor Funds, by purchasing properties the Investor loan agreements did not authorize, but which he now seeks to prevent the Receiver from selling. Through interest that erodes value by at least $170,000 per month, the receivership is paying the price for Barton's speculation. Because of the high rate of interest accruing on the debt secured by these properties, since October 22, 2022 more than $2,000,000 in value has been lost. **ROA.13988;** *see also* **Dkt. 528**.

That loss does not include the additional losses attributable to a softening real estate market, which just for the "Amerigold Suites" has resulted in a $750,000 decrease in value. Dkt. 528, p. 1. In March 2023, the Court approved sale of the Amerigold Suites for $5,500,000. **ROA.5680-5681**. The Receiver was unable to close that sale, however, while Barton's appeal of the order approving the sale was pending.[36] Although the appeal was originally dismissed for lack of jurisdiction, that opinion was later vacated and the appeal was dismissed as moot. After the new

---

[36] *See* Appeal No. 23-10515.

Receivership Order was entered, the Receiver obtained another order, again authorizing the sale. **ROA.15096-15097**. Barton's current appeal, No. 24-10004, challenging that and two other sales orders, again effectively stayed the sale causing the first buyer to terminate the sale.[37] Dkt.500. Barton also continues to *actively* interfere with these sales, despite an express provision in the Receivership Order prohibiting such interference [**ROA.14811-14812**] and the District Court's prior admonitions [**ROA.7463**], by telling contracted buyers that their sales will not close. **Dkt.530**.

With respect to the Frisco Gate property, Barton not only consented to that sale, he brought the buyer to the Receiver and complained the Receiver took too long to negotiate the sale. **ROA.3062**. And as this Court knows from Barton's prior appeal of the order initially approving the sale of the Rock Creek Property,[38] Barton's play for sympathy about that investment property, owned by a single purpose entity controlled by Barton rather than Barton individually, must be viewed in light of: (1) the significant amount of Investor Funds traced into Barton's purchase of the property; **ROA.10256-10257**, (2) Barton having listed the property for sale before the Receiver was appointed; **ROA.2575; 2700**, (3) Barton moving art out of the property and secreting it; **ROA.10328**, (4) Barton refuses to disclose the location

---

[37] Barton's appeal of the order approving the sale of the Amerigold Suites, is accordingly moot.

[38] Appeal No. 22-11226.

–27–

of that art, which in theory could have been sold initially, instead of at least some properties; **ROA.10328**; and (5) the relative speed at which a residential sale ordinarily closes as a temporary but expedient fix for a receivership estate that was cash-starved. **ROA. 2695; 15059; 15136**

As the Receiver has informed the District Court with respect to proposed sales—including a new sales contract for the Amerigold Suites following the first buyer's termination of the contract on appeal here—the purpose of these sales is to preserve value by converting highly-leveraged assets with declining and eroding value, into cash. **ROA.14132-14133; 14135;** *see also* **Dkts. 500, 528** ("Receiver cannot service the debt on any property, which for the Hall Property, accrues at more than $30,000 per month. With respect to the Amerigold Suites, interest accrues at $13,000 per month").

## H. This Court Lacks Jurisdiction to Review Orders Approving Real Property Sales, and Barton's Serial Appeals Continue to Damage the Estate

Perhaps most importantly with respect to the Sale Orders and the Ratification Order, as this Court previously concluded in related appeals,[39] no appellate jurisdiction exists for an interlocutory appeal of these types of orders. *See Netsphere, Inc. v. Baron*, 799 F.3d 327, 331-32 (5th Cir. 2015). As the Eleventh Circuit

---

[39] *See* Appeal Nos. 22-11226 and 22-10516.

observed, the governing statutory provisions reveal the different scope of interlocutory jurisdiction for appeals of injunctions versus receivership orders:

> Section 1292(a)(1) "thereby expressly authorizes immediate appeals not only of front- and back-end orders 'granting,' 'refusing,' or 'dissolving' injunctions, but also of mid-stream orders 'continuing,' 'modifying,' or 'refusing to dissolve or modify' them. The contrast is unmistakable. Had Congress wanted to authorize the same robust interlocutory appellate review of interim receivership-related orders, it could have included similar language in § 1292(a)(2). It didn't, and its decision in that respect is 'telling.'"

*SEC v. Complete Bus. Sols. Group, Inc.*, 44 F.4th 1326, 1331–32 (11th Cir. 2022).

"To conclude otherwise would mean that virtually any order of the receiver within the scope of its jurisdiction would be potentially appealable. Such a piecemeal approach to the appellate process would be disruptive and costly, both to the parties and the courts." *Id.* at 1332–33 (internal quotation omitted); *see also United States v. Antiques Ltd. P'ship*, 760 F.3d 668, 671–72 (7th Cir. 2014) (concluding no jurisdiction existed over order approving receiver's sale of property, because "that would both strain the statutory language and make anything the receiver did appealable immediately, which could flood the courts of appeals with interlocutory appeals.").

Similarly, as Barton intends through his serial appeals, (seven so far) piecemeal appeals of every order entered by the District Court hinders the primary purpose of the equitable receivership: "marshaling [] the estate's assets for the benefit of aggrieved investors and other creditors of the receivership entities." *SEC*

*v. Stanford Int'l Bank, Ltd.*, 927 F.3d 830, 840 (5th Cir. 2019). Indeed, Barton intends these appeals to create the stay he has not sought in this appeal and which were generally denied in the prior one. This Court should not permit continued frustration of the purpose of the receivership through serial but improper appeals. After dismissing Appeal No. 24-10004 and Barton's appeal of the Ratification Order in Appeal 23-11237, this Court should, and indeed must, prohibit similar appeals.

## I.    The Current Status of the Receivership and the Effect of the Relief Barton Seeks

More than thirty lawsuits, many seeking foreclosure and one involving personal injury to a child at the Amerigold Suites, were initially stayed by the Receivership Order. **ROA.3265-3276**; *see also* **Dkts. 476, 491**.  Although the Receiver has reached settlements that resolve a few of these lawsuits, most are still stayed. The Receiver is negotiating with the IRS regarding penalties for returns Barton failed to file and creditors who seek to exempt collateral from the receivership and seize it.  *See* **ROA.10574; 13664**; *see also* **Dkt. 505**. He continues to negotiate settlements with creditors who claim injury based on the continuing stay, [**Dkts. 473, 487, 494, 513, 519**], and find avenues to generate income to pay property taxes, insurance, and other bills.  The Receiver has filed (and stayed) lawsuits against third parties to preserve limitations regarding those claims, [**Dkt. 472**] and continues management of the occupied Amerigold Suites, for instance supervision and payment of employees, utilities, and insurance. Buyers are

conducting diligence regarding approved sales that have not yet closed [*see* **Dkt. 500, 502, 513**]; a tenant that Barton or his family have repeatedly harassed occupies another property pursuant to a lease **[Dkt. 491, pp. 16-20**];[40] and the Receiver continues to regularly correspond with HUD, the lender, and auditors on the HUD Apartments in connection with extensive annual audits and other matters. **ROA.10262-10272**; **Dkt. 456 at 27-33**.

In short, for all the reasons the District Court concluded that a monitorship or an injunction were inadequate, [**ROA.14775**] if this Cout is inclined to vacate or reverse any part of the Order, it should stay such an order to allow time to address these myriad issues.

Finally, because insufficient assets exist to compensate the Investors let alone creditors, and because Barton has refused to comply with the District Court's orders regarding identifying and recovering assets, as well as tracing, [**ROA.3119**], the District Court did not err in refusing his request to release funds for a defense in this or any case. *See SEC v. Dobbins*, No. CIV.3:04-CV-0605-H, 2004 WL 957715, at *2 (N.D. Tex. Apr. 14, 2004) (citing *SEC v. Quinn*, 997 F.2d 287, 289 (7th Cir.1993) ("Just as a bank robber cannot use the loot to wage the best defense money can buy, so a swindler in securities markets cannot use the victims' assets to hire counsel who will help him retain the gleanings of crime.") (internal citations omitted)).

---

[40] *See also,* Appeal No. 23-10515, Doc. 6, and Appeal No. 22-11132, Doc. 5, pp. 20-22.

## VI.   <u>CONCLUSION</u>

This Court should not accept Barton's invitation to conclude that any legal error occurred with respect to entry of the new Receivership Order, given the District Court's faithful adherence to the standard this Court announced in *Barton*.  Likewise, Barton fails to demonstrate any abuse of discretion by the District Court in exercising its ample discretion to enter a new receivership order and determine the appropriate scope of the Order.  Finally, this Court should dismiss Barton's appeal of "administrative" orders for which no interlocutory jurisdiction exists, the Ratification Order and the Sales Orders, and dissuade in the clearest terms possible, similar future appeals.

Respectfully submitted,

By: */s/ Charlene C. Koonce*
    Charlene C. Koonce
     State Bar No. 11672850
     charlene@brownfoxlaw.com
    Timothy B. Wells
     State Bar No. 24131941
     tim@brownfoxlaw.com
    BROWN FOX PLLC
    8111 Preston Road, Suite 300
    Dallas, Texas 75225
    T: (214) 327-5000
    F: (214) 327-5001

*Attorneys for Receiver Cortney C. Thomas*

## CERTIFICATE OF COMPLIANCE

1.    I certify that this Motion complies with the type-volume limit of FED. R. APP. P. 21(d) because, excluding the words that need not be counted, it contains 7,410 words.

2.    This Motion complies with the typeface requirements of FED. R. APP. P. 32(a)(5) and the type style requirements of FED. R. APP. P. 32(a)(6) because it has been prepared in a proportionally-spaced typeface using Microsoft Word 365 in Times New Roman 14-point font in text and Times New Roman 12-point font in footnotes.

*/s/ Charlene C. Koonce*
Charlene C. Koonce

–33–

## **CERTIFICATE UNDER ECF FILING STANDARDS**

Pursuant to paragraph A(6) of this Court's ECF Filing Standards, I certify that (1) required privacy redactions have been made (*see* Local Rule 25.2.13); (2) the electronic submission is an exact copy of the paper document (*see* Local Rule 25.2.1); and (3) the document has been scanned for viruses with the most recent version of a commercial virus scanning program and is free of viruses.

*/s/ Charlene C. Koonce*
Charlene C. Koonce